ROBINSON MILLER LLC
Michael J. Gesualdo (mgesualdo@rwmlegal.com)
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
(973) 690-5400

-and-

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
James D. Weinberger (jweinberger@fzlz.com)
    (*pro hac vice application forthcoming*)
Laura Popp-Rosenberg (lpopp-rosenberg@fzlz.com)
     (*pro hac vice application forthcoming*)
Kimberly B. Frumkin (kfrumkin@fzlz.com)
    (*pro hac vice application forthcoming*)
151 West 42nd Street, 17th Floor
New York, New York 10036
(212) 813-5900

*Attorneys for Plaintiffs Kenvue Inc. and Kenvue Brands LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KENVUE INC. AND KENVUE BRANDS LLC <br><br> Plaintiffs, <br><br> v. <br><br> COMMONWEALTH WHOLESALE CORP. <br><br> Defendant. | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Kenvue Inc. and Kenvue Brands LLC ("Kenvue Brands," and together with Kenvue Inc., "Plaintiffs" or "Kenvue"), by its attorneys Robinson Miller LLC and Fross Zelnick Lehrman & Zissu, P.C., for its Complaint against Defendant Commonwealth Wholesale Corp. ("Commonwealth" or "Defendant") alleges as follows:

SUBSTANCE OF THE ACTION

1.      This action arises out of Defendant's distribution and sale in the United States of grey market personal care products: products bearing Kenvue's long-sold and federally registered LISTERINE, NEUTROGENA, CLEAN & CLEAR, and AVEENO trademarks that were intended for sale in foreign markets and which are physically and materially different than their authorized United States counterparts.

2.      Specifically, Defendant is offering for sale and selling in the United States certain of Kenvue's personal care products that are authorized for sale only in foreign markets (the "Unauthorized Kenvue Products"). Such products are not registered with or approved by the U.S. Food and Drug Administration ("FDA") and are often marketed and sold with product labels that lack FDA-required or FDA-approved labeling and information. The Unauthorized Kenvue Products also lack United States consumer service and contact information, and sometimes make product and efficacy claims not used by Plaintiffs in the United States (including because such claims may not be permitted in the United States). Further, some of the Unauthorized Kenvue Products Defendant sells have no U.S. counterpart product at all or have different ingredients than Kenvue's products authorized for sale in the United States.

3.      Defendant's conduct is likely to lead, and in fact has led, U.S. consumers to suspect that the Defendant's Unauthorized Kenvue Goods are inferior, defective, or counterfeit, all to the detriment of Kenvue's reputation and goodwill, and has persisted despite several prior objections of Kenvue and numerous assurances by Defendant that it would cease all such activity.

4.      Because Defendant is using Kenvue's trademarks to sell the Unauthorized Kenvue Products that are physically and materially different from Kenvue's authorized United

States products, Defendant is liable for federal trademark infringement under Section 32(1) of the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114(1); unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B); and unfair competition under N.J. Stat. § 56:4-1 and New Jersey common law. Kenvue seeks, *inter alia*, injunctive relief; an accounting and award of Defendant's profits flowing from its infringing activities, prejudgment interest; attorneys' fees; and any other relief the Court deems just and proper.

<u>PARTIES</u>

5.      Plaintiff Kenvue Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at 199 Grandview Road, Skillman, NJ 08558.

6.      Plaintiff Kenvue Brands LLC is a limited liability company organized and existing under the laws of Delaware with a principal place of business at 1 Kenvue Way, Summit, NJ 07901.

7.      Upon information and belief, Commonwealth Wholesale Corp. is a corporation organized and existing under the laws of New Jersey with a principal place of business at 900 Paterson Plank Road, East Rutherford, NJ 07073.

<u>JURISDICTION AND VENUE</u>

8.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a)-(b). The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over Defendant because Defendant does business in New Jersey and a substantial portion of the events at issue have arisen and will arise in this judicial district.

10.     Upon information and belief, venue is proper in this district pursuant to Sections 1391(b)(1) and (2) of the Judicial Code, 28 U.S.C. §§ 1391(b)(1), (2), because Defendant resides in this district and because a substantial part of the events giving rise to the claims occurred in this district.

FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.      Plaintiffs' Personal Care Products Business

11.     Kenvue Inc., the successor-in-interest to the consumer health business of Johnson & Johnson ("J&J"), is the world's largest pure-play consumer health company by revenue. Built on more than a century of heritage and propelled forward by science, Kenvue's iconic brands – including LISTERINE, NEUTROGENA, CLEAN & CLEAR, AVEENO, JOHNSON'S, TYLENOL, and ZYRTEC – are all highly recommended by health care professionals and can be trusted by consumers who use them to improve their daily lives.

12.     As a leader in the field of consumer health and personal care products, Kenvue ensures that all of its products are marketed and sold in a manner that cater to U.S. consumer preferences and comply with U.S. laws. Before its products are sold and distributed, Kenvue ensures they are packaged and labeled in a lawful and uniform manner. Specifically, all products are registered with the FDA, if required, pursuant to 21 C.F.R. § 207 *et seq.*, include the same trademarks, sub-brands, and varieties, and include a list of ingredients and "Drug Facts," if required by the FDA pursuant to 21 C.F.R. § 201.66. The products also list local contact and customer service information.

13.    To help ensure that the only products sold in the United States are those intended for sale here, Kenvue requires the majority of U.S. retailers to purchase products only from Kenvue directly unless there is an approved exception.

14.    Kenvue's sales of its personal care products in the United States have been enormously successful because of the high quality of, and consistent customer experience with, those products, as well as its substantial investment in the marketing and promotion of the products to consumers.

15.    Kenvue also sells its personal care products outside of the United States. While these products are of the same high quality as those intended for sale in the United States, Kenvue's products intended for sale in foreign markets differ from their authorized United States counterparts in numerous ways. For example, products are labeled in the language of the country where they are to be sold (including using British as opposed to American spelling), comply with local health and labeling regulations, use the metric system (as opposed to U.S. customary units), and provide customer service contact information which is local to the jurisdiction or region of purchase. Certain products are also sold under different product names with no corresponding U.S. version. Products also use different secondary and/or tertiary trademarks. The products may also bear different claims about attributes and efficacy. Finally, product formulations may differ due to local laws and regulations, as well as local consumer tastes and preferences (such as, by way of example, fragrance or flavor, if applicable).

B.    Kenvue Inc.'s Registered Trademarks

16.    All of Kenvue's U.S. products are marketed under a brand name that is subject to a trademark registered at the United States Patent & Trademark Office ("USPTO") and owned by Kenvue Inc. The relevant marks include, but are not limited to, the following:

| MARK | REG. NO. | REG. DATE | GOODS |
|---|---|---|---|
| NEUTROGENA | 1631254 | 1/15/1991 | Shampoo, hair conditioner, body lotion, skin creams, night creams, eye creams, handcreams, skin emulsions, hand emulsions, body emulsions, body oil, astringent gel for acne-prone skin, acne mask, antiseptic cleaner for acne-prone skin, skin cleanser, and lip moisturizer |
| NEUTROGENA | 590385 | 6/1/1954 | Soap |
| NEUTROGENA | 2019977 | 11/26/1996 | Hair treatment products, namely, conditioners, bath products, namely, bath gel, foaming facial cleanser; sun protection products, namely, sun-block in stick form sunblock lotion, sunless tanning lotion and sunless tanning spray |
| AVEENO | 3872156 | 11/9/2010 | Body wash; facial cleansing bar; facial cleansing pad; facial cleansing scrub; non-medicated eye serum; sunblock lotion; sunblock spray; hair care, namely, shampoo, conditioner, non-medicated bath treatment preparation to soothe and relieve irritated, itching or inflamed skin |
| AVEENO | 2052166 | 4/15/1997 | Skin moisturizers, skin cleansers, shower and bath oil, and moisturizing bath powders |
| CLEAN & CLEAR | 4455150 | 12/24/2013 | Acne treatment preparations, medicated astringents, medicated skin moisturizers and skin cleanser |
| CLEAN & CLEAR | 1578514 | 1/23/1990 | Facial soap, facial soap for acne, facial moisture lotion |
| LISTERINE | 41413 | 11/3/1903 | Liquid chemical or medical preparation manufactured by us under a private formula and more especially known as an antiseptic |

| MARK | REG. NO. | REG. DATE | GOODS |
|------|----------|-----------|-------|
| LISTERINE | 3218074 | 3/13/2007 | Non-medicated mouthwash, mouth rinse, breath fresheners, cosmetic tooth whiteners, breath freshening dissolving strips, and toothpaste |

(These trademarks are referred to collectively as the "Kenvue Marks.") All of the registrations listed are valid, subsisting, and in full force and effect. In addition, all of the registrations other than Registration No. 4455150 are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore serve as conclusive evidence of Kenvue Inc.'s ownership of those marks and of its exclusive right to use those marks in commerce on or in connection with all of the goods identified in the registrations, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b). True and correct copies of these registrations are attached as **Exhibit 1**.

17.     Due to Kenvue's strong investment in marketing, as well as its sales success and the great recognition of products bearing or sold under each of the different Kenvue Marks, each mark has come to represent an enormous goodwill.

C.     Defendant's Unlawful Conduct

18.     Upon information and belief, Defendant is a wholesale distributor of health, beauty, personal care, and household products that ships products to retailers throughout the United States.

19.     Upon information and belief, Defendant has sold hundreds of thousands of Unauthorized Kenvue Products to retailers such as TJ Maxx, Five Below, and others.

20.     The Unauthorized Kenvue Products are materially different from their authorized United States counterparts in numerous ways. Specifically, many of the Unauthorized Kenvue Products sold by Defendant are required to be registered with the FDA but lack such registration, as well lacking FDA-required "Drug Fact" labeling. Some of the Unauthorized Kenvue Products

also contain different ingredients, contain different directions and warnings, contain different claims and regional vernacular, and do not have U.S. customer service and contact information. Further, some of the Unauthorized Kenvue Products do not have an authorized U.S. counterpart for various reasons.

21.     Examples of some of the different Unauthorized Kenvue Products compared to the products authorized for resale in the United States by Kenvue are discussed and depicted below.

22.     Defendant is selling a product called NEUTROGENA Hydro Boost Facial Wipes that is not authorized for sale in the United States. The U.S. authorized product bears a different name: NEUTROGENA Hydro Boost Ultra-Soft Cleansing Towelettes. Defendant's unauthorized product also has a different list of ingredients than the product authorized for U.S. sale. Tellingly, the version authorized for sale in the U.S. directs consumers to wipe the product over their face, eyes, and lips, while the Unauthorized Kenvue Product explicitly warns consumers to "[a]void contact with lips." Further, the authorized version of this product states that it is "Dermatologist Recommended," while the Unauthorized Kenvue Product only states that it is "Dermatologist Tested." Pictures of the two products can be seen below:

| Product Authorized for U.S. Sale | Unauthorized Kenvue Product |
| --- | --- |



| Product Authorized for U.S. Sale | Unauthorized Kenvue Product |
|---|---|



23.    Another Unauthorized Kenvue Product being sold by Defendant is LISTERINE Cool Mint mouthwash. The version authorized for sale in the United States has a different name: LISTERINE Cool Mint Antiseptic mouthwash. The authorized U.S. product has the American Dentist Association seal of approval, which is not present on the Unauthorized Kenvue Product version. In addition, the product authorized for sale in the U.S. includes claims of preventing and reducing, among other things, gingivitis, a claim that is not included anywhere on the Kenvue Unauthorized Product being sold by Defendant. The U.S.-authorized product also includes the FDA-required "Drug Facts" label on the back of the bottle, which is missing from the Unauthorized Kenvue Product, as can be seen below:

| Product Authorized for U.S. Sale | Unauthorized Kenvue Product |
| --- | --- |



24.     Another unauthorized LISTERINE product being sold by Defendant is LISTERINE Total Care mouthwash. Defendant sells two versions of this product: LISTERINE Total Care Gum Protect and LISTERINE Total Care Tartar Protect. Although Kenvue sells a LISTERINE Total Care mouthwash in the United States, neither of the versions sold by Defendant have a counterpart authorized for sale in the United States. The U.S. product is a purple color, while the Unauthorized Kenvue Products are green (Gum Protect) or blue (Tartar Protect). These are not just products with different names in different colors; they are different product formulations. Among other things, the Unauthorized Kenvue Product version boasts "10 in 1 Benefits" while the version authorized for U.S. sale claims only "6 in 1 Benefits." The back of the U.S. authorized bottle also includes the FDA-approved "Drug Facts" presentation, which is lacking on the Unauthorized Kenvue Product. Below, the version authorized for resale in the U.S. is shown next to one of the Unauthorized Kenvue Products being sold by Defendant:

| Kenvue Product Authorized for U.S. Sale | Unauthorized Kenvue Product |
| --- | --- |



25.     Defendant also is selling a product called CLEAN & CLEAR Blackhead Daily Scrub. Kenvue's authorized U.S. product has a different name: CLEAN & CLEAR Blackhead Eraser Scrub. Defendant's Unauthorized Kenvue Product includes the claims that it is "G.B.'s #1 Clear Skin Brand" and that users will "[s]ee fewer blackheads from the 1ˢᵗ wash," neither of which claims is included on the version authorized for sale in the United States. The version authorized for U.S. sale also includes the FDA-approved "Drug Facts" on the back, which is not present on the Unauthorized Kenvue Product, as can be seen below:

| Product Authorized for U.S. Sale | Unauthorized Kenvue Product |
|---|---|



Additionally, the authorized U.S. version indicates that the packaging is not recyclable, while the U.K. version indicates the packaging is recyclable.

26.     At least one of the Unauthorized Kenvue Products being sold by Defendant, NEUTROGENA Hydro Boost Water Gel, is being sold unboxed, whereas the version authorized for sale in the United States is always sold in a box. This unboxed version does not include any list of ingredients, so a consumer could have no information about ingredients that may differ between the products. Additionally, the jar of the Unauthorized Kenvue Product looks very different as can be seen below, and also is much smaller than the U.S. version. Further, while the U.S. packaging indicates the jar is not recyclable, the unauthorized version includes a recycling symbol.

| Product Authorized for U.S. Sale | Unauthorized Kenvue Product |
|---|---|
|  |  |

27.     The above recitations are not a complete list of all the differences between the authorized U.S. products and the Unauthorized Kenvue Products depicted, nor are all of the Unauthorized Kenvue Products being sold by Defendants accounted for above.

28.     Upon information and belief, Defendant has never been authorized by Kenvue to distribute or sell any of Kenvue's products.

29.     Defendant's sale of Unauthorized Kenvue Products that so clearly differ from the Kenvue products authorized for sale in the United States has the effect of suggesting that the Unauthorized Kenvue Products are an inferior, defective, or even counterfeit product. Indeed, the sale of the Unauthorized Kenvue Products has resulted in consumer confusion, with consumers believing the products to be counterfeit or otherwise not up to the standards they expect from the Kenvue products sold in the United States.

30.     Defendant is fully aware that its conduct violates Kenvue's rights. In November 2021, Kenvue's predecessor J&J sent a cease-and-desist letter to Defendant concerning its sale of Unauthorized Kenvue Products to various U.S. retailers. *See* **Exhibit 2**. In response, Defendant stated that none of the Unauthorized Kenvue Products had been sold to any entity for subsequent resale in the United States, and that, per J&J's request, it would only sell such products in their labeled country of origin. Based on these representations, J&J determined it did not need to take any further action at that time.

31.     Despite Defendant's representations following J&J's November 2021 letter, in the summer of 2022, it came to J&J's attention that Defendant was again engaging in the sale of Unauthorized Kenvue Products to U.S. retail stores. Accordingly, on July 1, 2022, J&J sent Defendant yet another letter, again demanding that it cease sales of the Unauthorized Kenvue Products to retail stores in the United States. *See* **Exhibit 3**. In response to this letter, Defendant

categorically denied it had purchased any foreign market J&J goods, stating that
"Commonwealth is out of the business of selling J&J grey goods in any domestic U.S.
market…." *See* **Exhibit 4**.

32.     Kenvue recently discovered that Defendant has brazenly continued to sell
Unauthorized Kenvue Products despite its prior representations to the contrary. Given that
Defendant had been placed on notice *twice* that its sale of the Unauthorized Kenvue Products
violated Kenvue and its predecessor's rights and further had agreed to cease such sales,
Defendant's continued sale of Unauthorized Kenvue Products is intentionally fraudulent,
malicious, willful, and wanton.

33.     The effect of Defendant's conduct is not only to degrade the appearance of
Kenvue's personal care products and confuse consumers, but it also has the potential for serious
ramifications. Defendant's sale of Unauthorized Kenvue Products deprives the consumers who
purchase them from having access to basic information, including, in some cases, full ingredient
information, local customer service numbers, and "Drug Facts," which may be required by the
FDA and otherwise are necessary for Kenvue to provide assurances to its customers that its
products are of the expected high quality and backed by service from Kenvue, if needed. Further,
consumers who are familiar with Kenvue's U.S. products may not notice that the Unauthorized
Kenvue Products have different ingredients, which could cause a potentially serious allergic
reaction.

34.     Defendant's actions have damaged and will continue to damage the goodwill and
trustworthiness of Kenvue's brands and the Kenvue Marks in the minds of consumers.
Purchasers or prospective purchasers who purchase Unauthorized Kenvue Products distributed
by Defendant bearing Kenvue Inc.'s federally registered trademarks are likely to mistakenly

attribute these products to Kenvue and to believe that Kenvue has authorized the disposition of such products in this manner to the U.S. public.

35.    Defendant's unlawful actions described above commenced many years after Kenvue and its predecessor began using the Kenvue Marks, many years after the Kenvue Marks had achieved worldwide notoriety, and many years after the Kenvue Marks were registered in the USPTO.

36.    Defendant's activities are knowingly and willfully in violation of Kenvue's rights and constitute a deliberate intent to trade on the fame and goodwill of the Kenvue Marks.

37.    Defendant's unauthorized acts as described herein have caused and will continue to cause irreparable harm to Kenvue's business and goodwill and will harm and continue to harm the public unless permanently restrained by this Court. Kenvue has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF:**
**<u>FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))</u>**

38.    Kenvue Inc. repeats and realleges the allegations set forth in paragraphs 1 to 37 above as if fully set forth herein.

39.    Defendant has, without authorization, imported, distributed, and sold in the United States Unauthorized Kenvue Products: products featuring the Kenvue Marks, which are physically and materially different from those authorized for sale in the United States.

40.    The sale of the Unauthorized Kenvue Products by Defendant deprives Kenvue of the ability to ensure the quality of products bearing the Kenvue Marks.

41.    The sale of the Unauthorized Kenvue Products by Defendant is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Kenvue in that purchasers and others in the United States are likely to believe that Kenvue authorizes and controls sales of Defendant's Unauthorized Kenvue Products, or that

Defendant is associated with or related to Kenvue or is authorized by Kenvue to distribute or sell products bearing the Kenvue Marks in the United States when it is not.

42.    Defendant's use of Kenvue Inc.'s registered trademarks in connection with the sale of the Unauthorized Kenvue Products constitutes trademark infringement of the Kenvue Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

43.    Defendant's conduct is willful and deliberate and undertaken with the intent to reap the benefit of the goodwill and reputation associated with the Kenvue Marks.

44.    The aforesaid conduct of Defendant is causing immediate and irreparable injury to Kenvue and to its goodwill and reputation and will continue to damage Kenvue Inc. and deceive and harm the public unless enjoined by this Court.

45.    Kenvue Inc. has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF: FEDERAL UNFAIR COMPETITION (15 U.S.C. §§ 1125(a)(1)(A))**

46.    Kenvue repeats and realleges the allegations set forth in paragraphs 1 to 45 above as if fully set forth herein.

47.    Defendant has, without authorization, imported, distributed, and sold in the United States Unauthorized Kenvue Products: products featuring the Kenvue Marks, which are physically and materially different from those authorized for sale in the United States.

48.    The sale of the Unauthorized Kenvue Products by Defendant deprives Kenvue of the ability to ensure the quality of products bearing the Kenvue Marks.

49.    The sale of the Unauthorized Kenvue Products by Defendant is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Kenvue in that purchasers and others in the United States are likely to believe that Kenvue authorizes and controls sales of Defendant's Unauthorized Kenvue Products, or that

Defendant is associated with or related to Kenvue or is authorized by Kenvue to distribute or sell the products bearing the Kenvue Marks in the United States when it is not.

50.     Defendant's conduct described herein constitutes unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

51.     Defendant's conduct is willful and deliberate and undertaken with the intent to reap the benefit of the goodwill and reputation associated with the Kenvue Marks.

52.     The aforesaid conduct of Defendant is causing immediate and irreparable injury to Kenvue and to its goodwill and reputation and will continue to damage Kenvue and deceive and harm the public unless enjoined by this Court.

53.     Kenvue has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF: UNFAIR COMPETITION UNDER NEW JERSEY STATE LAW (N.J. STAT. §56:4-1) AND COMMON LAW

54.     Kenvue repeats and realleges the allegations set forth in paragraphs 1 to 53 above as if fully set forth herein.

55.     Defendant has, without authorization, imported, distributed, and sold in the United States Unauthorized Kenvue Products: products featuring the Kenvue Marks, which are physically and materially different from those authorized for sale in the United States.

46.     The sale of the Unauthorized Kenvue Products by Defendant deprives Kenvue of the ability to ensure the quality of products bearing the Kenvue Marks.

47.     The sale of the Unauthorized Kenvue Products by Defendant is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Kenvue in that purchasers and others in the United States are likely to believe that Kenvue authorizes and controls sales of Defendant's Unauthorized Kenvue Products, or that

Defendant is associated with or related to Kenvue or is authorized by Kenvue to distribute or sell products bearing the Kenvue Marks in the United States when it is not.

48.      Defendant's conduct constitutes unfair competition and violates the statutory (N.J. Stat. § 56:4-1) and common law of the State of New Jersey.

49.      Defendant's conduct is willful and deliberate and undertaken with the intent to reap the benefit of the goodwill and reputation associated with the Kenvue Marks.

50.      The aforesaid conduct of Defendant is causing immediate and irreparable injury to Kenvue and to its goodwill and reputation and will continue to damage Kenvue and deceive and harm the public unless enjoined by this Court.

51.      Kenvue has no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

1)      That a permanent injunction be issued enjoining Defendant, and any of its agents, officers, representatives, directors, privies, licensees, attorneys, servants, employees, affiliates, successors and assigns, all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part by any of the Defendant, from:

(a)      using any of the Kenvue Marks, including but not limited to those identified in the Complaint, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Kenvue's trademarks, on or in connection with any advertisement, promotion, offering for sale, sale, or distribution of Kenvue-branded products, unless such use is in connection with genuine Kenvue goods of the nature, type, and in the form authorized by Plaintiffs for sale in the United States;

(b)      offering for sale, displaying, importing, or selling any of Plaintiffs' products that have not been authorized for sale in the United States, including but not limited to any Unauthorized Kenvue Products;

(c)      processing, packaging, importing, or transporting any of Plaintiffs' branded products, including but not limited to any Unauthorized Kenvue Products, that differ in any material way from Plaintiffs' genuine products offered or sold through authorized channels in the United States;

(d)      engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of any of Kenvue's Marks;

(e)      disposing, destroying, altering, moving, removing, concealing, tampering with, or in any manner secreting any business records (including computer records) of any kind including invoices, correspondence, books of account, receipts, or other documentation relating or referring in any manner to the manufacture, advertising, receiving, acquisition, importation, promotion, display, purchase, sale, offer for sale, or distribution of any merchandise bearing the Kenvue Marks that was not authorized for sale by Plaintiffs in the United States;

(f)      instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (e) above.

2)      Directing that Defendant, at its own expense, immediately deliver up for destruction its entire inventory of goods bearing any of the Kenvue Marks that differ materially from goods authorized for sale in the United States and permitting Plaintiffs to destroy such products or otherwise dispose of them lawfully without compensation to Defendant.

3)      Directing that Defendant make available to Plaintiffs for review, inspection, and copying, all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer discs and backup discs) and other documents concerning all transactions relating to the importation, promotion, advertising, display, offering for sale, or sale of any product incorporating bearing any of the Kenvue Marks that differ materially from goods authorized for sale in the United States, and provide Plaintiffs the names, addresses, and all other contact information in their possession, including telephone and fax numbers for (a) the source of such products including all manufacturers, distributors and/or suppliers, and (b) all persons or entities to whom Defendant has sold, distributed or supplied such products.

4)      Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any product manufactured, sold, or otherwise circulated or promoted by Defendant within the United States is authorized by Plaintiffs or related in any way to Plaintiffs or that Defendant is otherwise affiliated with Plaintiffs.

5)      Directing that Defendant file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

6)      Awarding Plaintiffs monetary relief, including Defendant's profits, which amount shall be trebled, from its sale of Plaintiffs' non-genuine personal care products pursuant to 15 U.S.C. §§ 1117(a) and N.J. Stat. § 56:4-2; Plaintiffs' actual damages trebled pursuant to 15 U.S.C. §§ 1117(a) and N.J. Stat. § 56:4-2; and punitive and/or enhanced damages as provided for under applicable law.

7)      Awarding to Plaintiffs their costs and disbursements incurred in this action, including reasonable attorneys' fees and expenses pursuant to 15 U.S.C. § 1117(a).

8)      Awarding to Plaintiffs interest, including pre-judgment interest on the foregoing sums pursuant to 15 U.S.C. § 1117(a).

9)      Awarding to Plaintiffs such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs demand a jury trial in this action.

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

The undersigned counsel for Plaintiffs hereby certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: January 3, 2025        Respectfully submitted,

By:   *s/ Michael J. Gesualdo*
        Michael J. Gesualdo

ROBINSON MILLER LLC
Michael J. Gesualdo (mgesualdo@rwmlegal.com)
Ironside Newark
110 Edison Place, Suite 302
Newark, New Jersey 07102
(973) 690-5400

-and-

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
James D. Weinberger (jweinberger@fzlz.com)
    (*pro hac vice application forthcoming*)
Laura Popp-Rosenberg (lpopp-rosenberg@fzlz.com)
    (*pro hac vice application forthcoming*)
Kimberly B. Frumkin (kfrumkin@fzlz.com)
    (*pro hac vice application forthcoming*)

151 West 42nd Street, 17th Floor
New York, New York 10036
Tel:  (212) 813-5900

*Attorneys for Plaintiffs Kenvue Inc. and Kenvue
Brands LLC*